Robert Heieck, (AZ Bar No. 033735)
**DC Capital Law, LLP**
700 12th Street NW, Ste 700
Washington, D.C. 20005
rheieck@dccapitallaw.com

Brian Parker, (FL Bar No. 0980668)
**DC Capital Law, LLP**
*Pro Hac Vice Pending*
700 12th Street NW, Ste 700
Washington, D.C. 20005
bparker@dccapitallaw.com
*Attorneys for Plaintiffs*

## IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Joseph Gross, individually, and on behalf of those Arizona residents similarly situated, | Case No: |
| Plaintiffs, | **COMPLAINT PROPOSED CLASS ACTION** |
| v. | |
| Diamond Resorts Management, Inc., | **(JURY DEMAND)** |
| Defendant. | |

## <u>CLASS ACTION COMPLAINT AND DEMAND FOR JURY</u>

NOW COMES Plaintiff, Joseph Gross, ("Gross" or "Plaintiff" or "Plaintiffs") on behalf of themselves and by and through counsel, DC CAPITAL LAW, LLP, brings this CLASS ACTION against the above listed Defendant, DIAMOND RESORTS MANAGEMENT, INC. ("Defendant" or "Diamond") on the grounds set forth herein:

### I.    <u>PRELIMINARY STATEMENT FOR CLASS ACTION</u>

1.    Plaintiff Gross, individually and on behalf of all others similarly situated and demanding a trial by jury, brings this action for the illegal practices of the Defendant *inter alia*, for using false, deceptive, and misleading practices, and other illegal collection communications in connection with their attempts to collect an alleged debts from the Plaintiffs and putative class members in violation of the FDCPA's

mandates on collecting debt without providing the required and Mandatory Notices of Validation and Verification of Disputed debts under 15 U.S.C. § 1692g *et seq*.

2.    Defendant has crafted a collection communication letter that avoids the regulation of the debt collection activities of Defendant by eliminating the notice to the Arizona Consumer of their Federal Validation and Verification Dispute rights under 15 U.S.C. §§ 1692g(a)1-5, as well as, the Arizona consumer's right to have collection efforts cease under 15 U.S.C. § 1692g(b).

3.    Defendant has crafted a "FINAL NOTICE" collection letter that seeks to collect defaulted debt on behalf of the Owners Associations for which Defendant collect pursuant to 15 U.S.C. § 1692g. This "FINAL NOTICE" threatens public liens, foreclosure proceedings, additional collection costs and legal fees, and adverse effects to the Arizona Consumer's credit rating if the debt remains unpaid to Defendant, where the amount of such debt is neither explained, detailed, nor legally or contractually justified to the debtor, in violation of 15 U.S.C. § 1692e.

4.    The Owners Associations, on whose behalf Defendant collects, include, but are not limited to, Kohl's Ranch Owners Association; The Ridge on Sedona Golf Resort Owners Association; Sedona Summit Resort Owners Association; Sedona Vacation Club Incorporated; Scottsdale Villa Mirage Owners Association; Premiere Vacation Collection Owners Association.

5.    The Plaintiffs allege in this proposed class action that Defendant's collection practices alleged above in Paragraphs 1-4 and below violate the Fair Debt Collection Practices Act, 15 U.S.C. § 1692 *et seq.* ("FDCPA").

6.    The FDCPA regulates the behavior of collection agencies attempting to collect a debt on behalf of another. The United States Congress has found abundant evidence of the use of abusive, deceptive, and unfair debt collection practices by many debt collectors, and has determined that abusive debt collection practices contribute to a number of personal bankruptcies, marital instability, loss of jobs, and invasions of individual privacy.

7. Congress enacted the FDCPA for the following purposes: to protect consumers from a host of unfair, harassing, and deceptive debt collection practices; to eliminate abusive debt collection practices by debt collectors; to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged; and to promote consistent State action to protect consumers against debt collection abuses. To advance these purposes, the FDCPA codified several specific consumer-protective rights, including those in 15 U.S.C. § 1692g.

8. 15 U.S.C. § 1692g furthers the purpose of protecting consumers from abusive debt collection practices by requiring a debt collector who solicits payment form a consumer to provide that consumer with a detailed validation notice, which allows a consumer to confirm that she owes the debt sought by the collector before paying it. That is, § 1692g aims to provide the consumer a period of time to consider her options.

9. Significantly, the FDCPA gives consumers a private right of action to enforce its provisions against debt collectors. 15 U.S.C. § 1692k(a).

10. The FDCPA is a "broad remedial statute," *Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1060 (9th Cir. 2011), and must be liberally construed in favor of the consumer in order to effectuate this goal of eliminating abuse. *Clark v. Capital Credit & Collection Servs., Inc.,* 460 F.3d 1162, 1168 (9th Cir. 2006).

11. To state a claim under FDCPA, the plaintiff must allege in her complaint: "(1) the plaintiff has been the object of collection activity arising from consumer debt; (2) the defendant is a debt collector as defined by the FDCPA; and (3) the defendant has engaged in an act or omission prohibited by the FDCPA." *Anselmi v. Shendell & Assoc., P.A.*, No. 12-61599-CIV-WILLIAMS, 2015 WL 11121357, at *2 (S.D. Fla. June 6, 2015).

12. The FDCPA requires debt collectors to send consumers a written validation notice "[w]ithin five days after the initial communication with a consumer in connection with the collection of any debt." *See* 15 U.S.C. § 1692g(a). The validation notice must inform consumers that, among other things,

3

the debt collector will verify the debt if the consumer disputes it in writing and that, upon the consumer's written request, the debt collector will provide the name and address of the original creditor. 15 U.S.C. § 1692g(a)(4) and (5).

13. The FDCPA defines "consumer" as "any natural persona obligated or allegedly obligated to pay any debt." Plaintiff, Gross, as trustee and beneficiary of the Gross Family Trust, is a natural person residing in Maricopa County, Arizona and is a "consumer" as defined and used in the FDCPA.

14. Under the FDCPA, a "debt" is "any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment." 15 U.S.C. § 1692a (5). Assessments for Condominium and Homeowners' Associations, such as the Owners Associations here, on property acquired for personal, family, or household purposes are FDCPA debts. *Newman v. Boehm, Pearlstein & Bright*, 119 F.3d 477 (7th Cir. 1997).

15. The FDCPA "defin[es] the term 'debt collector' to embrace anyone who 'regularly collects or attempts to collect…debts owed or due…another.'" *Henson v. Santander Consumer USA Inc.*, 137 S. Ct. 1718, 1721 (2017) (citing 15 U.S.C. § 1692a (6)) (alterations in original). *McNair v. Maxwell & Morgan PC*, No. 15-17383 (9th Cir. 2018). Defendant regularly collects or attempts to collect debts owed or due to various Owners Associations and, therefore, is a debt collector under the FDCPA.

16. Defendant is a debt collector collecting debts due or owed another (various Owners Associations) as part of the one and only initial contact of consumers in a "FINAL NOTICE" communication that seeks to scare Plaintiff, Gross, and Plaintiff class members into paying a debt that is undisputed or proven without providing the right of validation and verification under the FDCPA.

17. An FDCPA plaintiff need not even have actually been misled or deceived by the debt collector's representation; instead, liability depends on whether the hypothetical "least sophisticated debtor" likely would be misled. *See e.g. Gonzales v. Arrow Fin. Servs., LLC*, 660 F.3d 1055, 1061 & n.2 (9th Cir.

4

2011); *Terran v. Kaplan*, 109 F.3d 1428, 1431 (9th Cir. 1997). This inquiry is objective and is undertaken as a matter of law. *Gonzales*, 660 F.3d at 1061. *Tourgeman v. Collins Financial Servs., Inc*. 755 F.3d 1109, 1119 (9th Cir. 2014).

18. To prohibit deceptive practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading collection letters and names a non-exhaustive list of certain *per se* violations of false and deceptive collection conduct. 15 U.S.C. § 1692e (1)-(16). Among these *per se* violations prohibited by that section are: ***false representations concerning the character, amount, or legal status of any debt, 15 U.S.C. § 1692e(2)(A)***; and ***the use of any false representation or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer, 15 U.S.C. § 1692e (10)***. (emphasis added).

19. Defendant is an Arizona professional corporation that collects for timeshare condominiums, associations and resorts. Defendant uses instrumentalities of interstate commerce or the mails in a business the principal purpose of which is the collection of debts in the management of an association's billables and receivables. **Please see Exhibit 4**.

20. Defendant, through the "**FINAL NOTICE**" letters like **Exhibit 1 and Exhibit 3** to the purchaser of the timeshares of condos and resorts, regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be for Diamond creditor clients throughout the state of Arizona.

21. Diamond letters at **Exhibit 3** are the examples of the "**FINAL NOTICE"** letters Diamond sends on behalf of the Owners Associations through the US Postal Service to residents and buyers of timeshares and condos that are managed by Diamond creditor clients, the Owners Associations. As a third-party collection on behalf of its Owners Association clients, Diamond is a "debt collector" as the term is defined and/or used in the FDCPA.

22. The "**FINAL NOTICE**" letters sent by Defendant, as a debt collector on behalf of their Owners Association clients, are the initial and only letters Plaintiffs and Plaintiff potential class members receive after their Owners Association debt goes into **Default**. Defendant threatens foreclosure, collection and

legal fees, a "Notice of Intent to Lien," and adverse credit consequences if an unexplained and undisputed amount of debt is not paid within 30 days of the date of the letter being sent, while failing to provide the mandatory § 1692g Validation and Verification dispute language in the initial letters at **Exhibit 1** and **Exhibit 2**.

## II.    JURSIDICTION

23. This Court has jurisdiction under 15 U.S.C. § 1692k(d) and 28 U.S.C. § 1331.

24. Venue is proper in the District of Arizona under 28 U.S.C. § 1391(b), where the acts giving rise to Plaintiff's action occurred in this district, where Plaintiff resides in this district, and where Defendant transacts business in this district.

## III.    LAWS CONCERNING 15 U.S.C. § 1692g

25.  The FDCPA, 15 U.S.C § 1692g provides that:

**§ 1692g. Validation of debts:**

(a) Notice of debt; contents. Within five days after the initial communication with a consumer in connection with the collection of any debt, a debt collector shall, unless the following information is contained in the initial communication or the consumer has paid the debt, send the consumer a written notice containing—

(1) the amount of the debt;

(2) the name of the creditor to whom the debt is owed;

(3) a statement that unless the consumer, within thirty days after receipt of the notice, disputes the validity of the debt, or any portion thereof, the debt will be assumed to be valid by the debt collector;

(4) a statement that if the consumer notifies the debt collector in writing within the thirty-day period that the debt, or any portion thereof, is disputed, the debt collector will obtain

verification of the debt or a copy of a judgment against the consumer and a copy of such

verification or judgment will be mailed to the consumer by the debt collector; and

(5) a statement that, upon the consumer's written request within the thirty-day period, the debt

collector will provide the consumer with the name and address of the original creditor, if

different from the current creditor.

(b) Disputed debts. If the consumer notifies the debt collector in writing within the thirty-day period

described in subsection (a) that the debt, or any portion thereof, is disputed, or that the consumer

requests the name and address of the original creditor, ***the debt collector shall cease collection of***

***the debt, or any disputed portion thereof, until the debt collector obtains verification of the***

***debt or a copy of a judgment***, or the name and address of the original creditor, and a copy of

such verification or judgment, or name and address of the original creditor, is mailed to the

consumer by the debt collector. (emphasis added).

26. The validation notice may not be either "overshadowed" or contradicted by other language or

material in the original or subsequent collection letters sent within 30 days after receipt of the first one.

*Swanson v. Southern Oregon Credit Service, Inc.*, supra, 869 F.23d 1222 (9th Cir. 1988); *Harris v.*

*Payco General American Credits, Inc.*, 98 C 4245, 1998 U.S. Dist. LEXIS 20153 (N.D. Ill. Dec. 9,

1998). "A notice is overshadowing or contradictory if it would make the least sophisticated consumer

uncertain as to her rights.*" Russell v. Equifax A.R.S.*, 74 F.3d 30 (2d Cir. 1996).

27. To eliminate abusive debt collection practices, the FDCPA, at 15 U.S.C. § 1692g(a) sets forth

requirements for written notice of dispute and validation rights to a consumer. To prohibit deceptive

practices, the FDCPA, at 15 U.S.C. § 1692e, outlaws the use of false, deceptive, and misleading

collection practices and names a non-exhaustive list of certain *per se* violations of false and deceptive

collection conduct. 15 U.S.C. §§ 1692e (1)-(16).

28. As a response to "the recurring problem of debt collectors dunning the wrong person or

attempting to collect debts which the consumer has already paid," S.Rep. No. 95-382, at 4 (1977), as

7

reprinted in 1977 U.S.C.C.A.N. 1695, 1699, the FDCPA gives the consumer the right to dispute a debt claimed by a debt collector, and to seek verification of the validity of the debt. 15 U.S.C. § 1692g(b). *Jacobson v. Healthcare Financial Services, Inc.*, 434 F. Supp. 2d 133 (E.D.N.Y 2006). Section 1692g(a)(3) requires the validation notice to state that the debtor may dispute the debt "within thirty days after receipt of the notice" *Jacobson at 93*.

29. Numerous courts have recognized that the FDCPA's purpose - to eliminate abusive debt collection practices - would be undermined if subsequent debt collectors were excused from complying with the requirements contained in § 1692g. *Wright v. Ocwen Loan Servicing, LLC*, 12-14762, 2013 WL 5532687, at 4-5 (E.D.Mich. Oct.7, 2013), See, also *Lewis v. Nationstar Mortgage, F*.Supp.2d —, 13-11693, 2014 WL 1089557, at 7-10 (E.D.Mich. March 18, 2014).

30. Other subsections of § 1692g require a "writing," while § 1692g(a)(3) conspicuously leaves out the writing requirement. Applying the rules of statutory interpretation, the Court should find that the legislature intentionally left out a "writing" requirement in § 1692g(a)(3) because it explicitly included a "writing" requirement in other adjacent subsections."[W]hen the statute's language is plain, the sole function of the courts -at least where the disposition required by the text is not absurd -is to enforce it according to its terms." *Lamie v. United States Trustee,* 540 U.S. 526, 534; 124 S.Ct. 1023, 157 L.Ed.2d 1024 (2004) (internal quotation marks and citations omitted).

31. The plain meaning of § 1692g is that debtors can trigger the rights under subsection (a)(3) by either an oral or written "dispute," while debtors can trigger the rights under subsections (a)(4) and (a)(5) only through written dispute.

32. Subsection (a)(4) states that if the debtor disputes the debt in writing within thirty days, the debt collector must obtain verification of the debt and must send the debtor a copy of the verification. Subsection (a)(5) states that, if the debtor makes a written request, the debt collector must provide the name and address of the original creditor. Subsection (b) states that if the debtor disputes the

debt in writing within thirty days, the debt collector must cease collection efforts until the debt collector has verified the debt. *Graziano v. Harrison, 950 F. 2d 107 - Court of Appeals, 3rd Circuit 1991.*

33. The FDCPA's bona fide error defense at 15 U.S.C. § 1692k(c) does not apply to a violation of the FDCPA resulting from a debt collector's incorrect interpretation of a legal requirement of the FDCPA. *Jerman v. Carlisle, McNellie, Rini, Kramer & Ulrich LPA*, 130 S.Ct. 1605, 1611-12 (2010). "[W]here Congress includes particular language in one section of a statute but omits it in another section of the same Act, it is generally presumed that Congress acts intentionally and purposely in the disparate inclusion or exclusion." *Russello v. United States*, 464 U.S. 16, 23, 104 S. Ct. 296, 78 L. Ed. 2d 17 (1983).

## IV.    POLICIES AND PRACTICES COMPLAINED OF

34. It is Defendant's policy and practice to send initial written collection communications for its Diamonds timeshare "Association" clients marked in bold as a "**FINAL NOTICE**" to Association clients whose debts are in default and in the form attached as **Exhibit 1 and Exhibit 3** with threats of foreclosure, intent to lien, collection and legal fees and adverse credit consequences while seeking payment of an unexplained debt without the mandatory Validation and Verification dispute notice required by 15 U.S.C. § 1692g(a) and (b).

35. The Defendant's intent is to avoid the costs and expenses of following the regulations of the FDCPA and avoid consumers increasing the expenses of collection by eliminating rights a consumer like Gross has to seek validation and verification of the debt.

36. Because of Defendant's intent to avoid the FDCPA, the Defendant's collection attempts are made to the competitive disadvantage of those debt collectors who have chosen to abide by the law and refrain from using those same unlawful debt collection practices used by Defendants that violate 15 U.S.C. § 1692e, 15 U.S.C. § 1692e(2)(A), 15 U.S.C. § 1692g(a) and 15 U.S.C. § 1692(b).

37. Knowledge of these rights is vital to protecting consumers' abilities to exercise them. See *Consumer Information: Hearings Before the Subcomm. on Consumer Affairs of the H. Comm. on*

*Banking, Fin., and Urban Affairs*, 95th Cong. 212 (1977) (statement of Christian S. White, Assistant Dir. Spec. Stats., F.T.C.) ("[C]onsumers cannot be expected to exercise rights they are ignorant of."). Therefore, as a safeguard, § 1692g of the FDCPA requires collectors to inform consumers of their rights under the FDCPA via a written notice within five days of initial communication. *Manner of Debtor's Dispute Under the FDCPA is in Dispute,* Laura Atack, 48 Wash. U. J. L. & Pol'y 263 (2015), available at http://openscholarship.wustl.edu/law_journal_law_policy/vol48/iss1/14.

38. The acts and omissions of Defendant occurred in connection with efforts to collect the alleged Owners Association debts from Arizona Residents and putative class members through **Exhibit 1 and Exhibit 3,** were done intentionally and willfully and to avoid the regulations and mandates of the FDCPA and avoid the costs and expense of having to respond to validation and verification disputes from consumers as third-party debt collectors.

## V.  FACTS CONCERNING PLAINTIFF CLASS REPRESENTATIVES

39. On or about March 20, 2018, Defendant sent the Plaintiff a letter on behalf of their client, Sedona Vacation Club Incorporated and titled "**FINAL NOTICE.**" **Please see Exhibit 1 and Exhibit 3**. It is the first and only letter that Gross has received from Defendant, on behalf of Sedona Vacation Club Incorporated.

40. The letter arose out of a transaction in which Gross allegedly owed a debt to the Sedona Vacation Club Association for a timeshare maintenance fee that they had been billed by Sedona Vacation Club Association two months earlier. **Please see Exhibit 2**. The letter at **Exhibit 1** sought a payment of $1,426.01 as of March 20, 2018.

41. Under the FDCPA, the term "debt" means any obligation or alleged obligation of a consumer to pay money arising out of a transaction in which the money, property, insurance, or services which are the subject of the transaction are primarily for personal, family, or household purposes, whether or not such obligation has been reduced to judgment. The alleged Gross obligation is a "debt" as defined by 15 U.S.C. § 1692a(5).

42. Under the FDCPA, the term "consumer" means any natural person obligated or allegedly obligated to pay any debt. Gross is at all times relevant to this lawsuit, a "consumer" as that term is defined by 15 U.S.C. § 1692a (3) and two months before receiving the collection letters from Defendant, allegedly owed a consumer debt to Sedona Vacation Club Incorporated for $1,141.19 on January 22, 2018. **Please see Exhibit 1 and Exhibit 2**.

43. 15 U.S.C. § 1692e(11) requires a debt collector to inform a consumer in the initial communication with the consumer that "This communication is from a debt collector. This is an attempt to collect a debt and any information obtained will be used for that purpose." This disclosure is commonly known as the mini-Miranda.  The Mini-Miranda notice is missing from the letters to Plaintiff at **Exhibit 1 and Exhibit 3**.

44. The letters at **Exhibit 1** and **Exhibit 3** both start and end the same way with a demand for $1,200.01 and contain a signature block of Defendant, on behalf of Sedona Vacation Club Incorporated.

Sedona Vacation Club Incorporated
PO Box 8526
Coral Springs FL 33075-8526

March 20, 2018

VIA CERTIFIED AND REGULAR MAIL

▲ 131988_01_000061
Joseph Gross
Janice Gross
C/O De Capital Law
700 12th St NW Ste 700
Washington DC 20005-4052

## SEDONA VACATION CLUB INCORPORATED

Re:                         **FINAL NOTICE**
Account No:                 2080689
Resort:                     Sedona Vacation Club
Delinquent Amount:          $1,426.01 as of the above date

According to the Assessment Billing and Collection Policy ("the ABC Policy") sent to you with your original invoice, your annual assessment was due January 1, 2018, and to date, we have not received your payment.

Currently, your right to make a reservation, or use the accommodations and facilities at the resort(s) will be denied. Any reservations presently held in your name will be cancelled, including those with exchange companies.

Your options within 30 days from the date of this Notice to remedy the default are:

**Option 1**    Immediately bring your account current (please call 1.877.374.2582 for a current balance prior to sending payment) or provide satisfactory evidence of prior payment of the assessment.

Write your contract number on the check to ensure proper application of payment and send your payment to the address listed below. You may also pay by check or credit card over the phone or online at DiamondResorts.com

**Option 2**    Allow the account to remain delinquent and a lien will be filed in your name, against the interval. This matter will be sent over to a collection agency, which may result in additional collection and legal fees, and we will initiate foreclosure proceedings. **No further notice will be sent.**

Important Notice: A foreclosure action filed in the public records, regardless of its disposition, may adversely affect your credit rating.

10600 West Charleston Blvd., Las Vegas, Nevada 89135 • 1.702.684.8500 • DiamondResorts.com

12

We understand that this delinquency may have been a possible oversight, if that is the case; we apologize for any inconvenience this letter may have caused. If you have made a recent payment, please disregard this letter or visit DiamondResorts.com to verify that your account balance reflects recent payments.

If you are in the process of transferring ownership, please send an e-mail to Inventory@DiamondResorts.com or fax to 1.702.765.8770 to the attention of Pending Transfers to ensure proper documentation has been received.

Sincerely,

Diamond Resorts Management, Inc., on behalf of
Sedona Vacation Club Incorporated

45. While giving Plaintiff Gross 30 days from the date of the **FINAL NOTICE** to "remedy the default," the letter was dated for March 20, 2018 but was not sent to Gross until March 30, 2018:

Sedona Vacation Club Incorporated
PO Box 8526
Coral Springs FL 33075-8526

US POSTAGE AND FEES PAID
FIRST-CLASS
Mar 30 2018
Mailed from ZIP 33065
1 oz First-Class Mail Letter



071S00777793

**USPS CERTIFIED MAIL**



9414 8108 9876 5008 0996 33

131968_01_000051
Joseph Gross
C/O Dc Capital Law
700 12th St NW Ste 700
Washington DC 20005-4052

46. The letters at **Exhibit 1 and Exhibit 3** are made to appear that they are from Sedona Vacation Club Incorporated with return address of Sedona Vacation Club Incorporated on the letter of March 20, 2018 and the certified mailing above on March 30, 2018.

47. However, the letters at **Exhibit 1** and **Exhibit 3** give the Sedona Vacation Club Incorporated address but advised Plaintiffs to contact various phone numbers and addresses while informing the Plaintiffs the letters are from "Diamond, on behalf of Sedona Vacation Club Incorporated."

13

48. Gross and other Arizona class members receive these "**FINAL NOTICE**" letters all the same way and with two different addresses to send a check, two different phone numbers to contact, and less than twenty days to respond to. **Please see Exhibit 1, 3 and 4**.

49. The term "<u>debt collector</u>" means any person who uses any instrumentality of interstate commerce or the mails in any business the principal purpose of which is the collection of any debts, or who regularly collects or attempts to collect, directly or indirectly, debts owed or due or asserted to be owed or due another. 15 U.S.C. § 1692a (6).

50. Defendant is a third party collecting a debt on owed to and on behalf of, various Owners Associations, using the mail to communicate on behalf of the Owners Association while collecting debts. From Plaintiffs. Upon information and belief, at the time Defendant attempted to collect the alleged debts from Plaintiffs, the alleged debts were in default. Therefore, Defendant is communicating to Plaintiffs as a "debt collector," as defined by 15 U.S.C. § 1692a(6).

51. The Defendants are sending the same "**FINAL NOTICE**" letters throughout the State of Arizona to Gross and potential Class members while Defendant is acting on behalf of numerous other Owners Associations. Upon information and belief, all of these initial "**FINAL NOTICE**" letters follow the same communication format, as the sole communication a recipient receives that also states, "**No further notice will be sent**." **Please see Exhibit 3**.

52. Plaintiff and Plaintiff class members do not receive any more communications from Defendants five or more days later advising them of the mandatory Validation and Verification rights under the FDCPA.

53. 15 U.S.C. § 1692g(a)(4) and (a)(5) require that the debt collector, like the Defendant, must notify a consumer, like the Plaintiffs and Plaintiff class, that they can seek verification or validation of the disputed debt and that the verification and validation must be requested *in writing*. This notice of validation and verification under the FDCPA must be provided to the consumer within five days of the initial contact by the debt collector under 15 U.S.C. § 1692g(a).

14

54. **In violation of the FDCPA** and in their letters to Arizona Consumers at **Exhibit 1 and Exhibit 3**, Defendant fails to inform Plaintiff and the Class Members of their Federal right to validate and verify a disputed debt ***in writing*** when obtaining verification and validation under 15 U.S.C. § 1692g(a)(4) and (a)(5). (emphasis added).

55. **In violation of the FDCPA**, Defendant is requiring Plaintiff to pay a debt while threatening a public lien for the amount owed, foreclosure, collection and attorney costs, and adverse credit trade lines after receiving a "**FINAL NOTICE,"** and the letter is written purposely to avoid any written dispute to waive the Arizona consumer's right to seek verification by failing to make the request in writing, as required by the FDCPA. *Miller v.Payco-General American Credits, Inc.*, supra, 943 F.2d 482 (4th Cir. 1991); *Woolfolk v. Van Ru Credit Corp.*, 783 F. Supp. 724, 726 (D. Conn. 1990); *Flowers v. Accelerated Bureau of Collections*, 96 C 4003, 1997 U.S.Dist. LEXIS 3354, 1997 WL 136313 (N.D.Ill. Mar 19, 1997). Contra, *Terran v. Kaplan*, supra. "A consumer calling the defendant would not be exercising her validation rights and would not be entitled to the statutory cessation of debt collection activities." *Gaetano v. Payco of Wisconsin, Inc.*, 774 F. Supp. 1404, 1412 (D. Conn. 1990).

56. The numerous letters and collection attempts all being made by the same Defendant and in the same "**FINAL NOTICE**" format, and, upon information and belief, the statements contained in Defendants' Collection letters at **Exhibit 1 and Exhibit 3** constitute an attempt by Defendant to prevent Class Members exercising their dispute and validation rights under the FDCPA at 15 U.S.C. § 1692g.

57. Under the FDCPA, notice of the thirty-day validation period is necessary, but not sufficient to satisfy § 1692g(a). A debt collector must "effectively convey" the notice to the consumer. *Swanson v. Southern Oregon Credit Service, Inc.*, 869 F.2d 1222, 1225 (9th Cir.1988).

58. By hiding the fact that the consumer's dispute and verification must be in writing, the letter is crafted to also eliminate Plaintiff and the Class Member's right to have a debt collector cease collection activities under Subsection (b) which states:

**§ 1692g (b) Disputed debts**

If the consumer notifies the debt collector in writing within the thirty-day period described in subsection (a) of this section that the debt, or any portion thereof, is disputed, or that the consumer requests the name and address of the original creditor, *the debt collector shall cease collection of the debt, or any disputed portion thereof, until the debt collector obtains verification of the debt or a copy of a judgment*, or the name and address of the original creditor, and a copy of such verification or judgment, or name and address of the original creditor, is mailed to the consumer by the debt collector. (emphasis added).

59. By having the consumer not seek verification in writing, Defendant can continue to collect on the debt and avoid the delay and expense of having to follow the law under 15 U.S.C. § 1692g(a)(4) and (a)(5) and then create a public lien and foreclosure with accompanying credit damage that is made available to the public for an amount that is undisputed and false in violation of the FDCPA. Defendant also gets to bill the unwary consumer for extra collection and lawyer fees that would not be owed had the Defendants followed the FDCPA.

60. Defendant's violations with respect to its written communications in the form attached as **Exhibit 1** include, but are not limited to, the following:

    a.  Using false, deceptive, and misleading representations or means in connection with the collection of any debt in violation of 15 U.S.C. § 1692e;

    b.  Using false representations and/or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer in violation of 15 U.S.C. § 1692e(10);

    c.  Failing to properly disclose to the Plaintiff and Plaintiff class members that their right to seek verification or dispute of the debt must be in writing to be effective under the law in violation of 15 U.S.C. § 1692g(a)(4) and (a)(5).

    d.  Overshadowing or eliminating of the validation and dispute rights of the Plaintiffs under 15 U.S.C. § 1692g(a)(4), 15 U.S.C. § 1692g(a)(5) and 15 U.S.C. § 1692g(b).

61. The Defendant unlawful scheme and plan is circular in that the Plaintiffs suffer an injury in fact with the unlawful assessment for further and additional collection costs and lawyer fees, a public lien, foreclosure and adverse credit histories on the debt without the mandatory right to dispute it and prevent damage to their credit reports caused by the confusing collection letters that hide the very protections the FDCPA is founded upon: The right to dispute and seek validation of the debt under 15 U.S.C. § 1692g(a) and 15 U.S.C. § 1692g(b).

62. The right to dispute and seek validation of the debt under 15 U.S.C. § 1692g(a) and 15 U.S.C. Sec. 1692g(b) is granted to the Arizona consumer 30 days from the date of the receipt of the initial debt collection communication. Here, Defendant grant the Arizona consumer 30 days to remedy the default from the date of the letter that is not mailed out until at least ten days after the date on the letter.

63. By specifying that the debt must be disputed within thirty days from the date of receipt of the notice, Congress has consciously protected against abusive tactics of debt collectors, such as the backdating of notices or other practices that might shorten consumers time to respond. *Cavallaro v. Law Office of Shapiro & Kreisman*, 933 F. Supp. 1148 (E.D.N.Y. 1996)

64. The acts and omissions of Defendants done in connection with efforts to collect the alleged debts from Plaintiffs and the putative class members were done intentionally and willfully in violation of the FDCPA.

## VI.   CLASS ALLEGATIONS

65. This action is brought as a class action.  Plaintiff brings this action indivudally and on behalf of all other persons similarly situated pursuant to Rule 23 of the Federal Rules of Civil Procedure.

66. With respect to the Plaintiff **FDCPA Class**, this claim is brought on behalf of a class of (a) all persons in the State of Arizona; (b) to whom Defendant sent a written communication in the form attached as **Exhibit 1 and Exhibit 3** seeking a payment of a Defaulted debt for a Timeshare Owners Association;(c) in connection with Defendants' attempt to collect a debt;(d) which written

communications violate the FDCPA by not providing the mandatory Verification and Validation Dispute Rights of 15 U.S.C. § 1692g(a) and (b); (e) while failing to identify themselves as "debt collectors attempting to collect a debt and that any information obtained will be used for that purpose; and (f)  during a period beginning one year prior to the filing of this action and ending upon the service of this amended complaint.

67. The identities of all class members are readily ascertainable from the records of Defendant and the Creditor/Association they collect for and are alleged to be, based on information and belief, in the hundreds and thousands.

68. Excluded from the Plaintiff Class are the Defendants and all officers, members, partners, managers, directors, and employees of the Defendants and their respective immediate families, and legal counsel for all parties to this action and all members of their immediate families.

69. There are questions of law and fact common to the Plaintiff Class, which common issues predominate over any issues involving only individual class members.  The principal issues are whether the Defendant's written communications, in the form attached as **Exhibit 1, Exhibit 3**, violates the FDCPA as stated above.

70. The Plaintiffs' claims are typical of the class members, as all are based upon the same facts and legal theories.

71. The Plaintiffs will fairly and adequately protect the interests of the Plaintiff Classes defined in this complaint.  The Plaintiff has retained counsel with experience in handling consumer lawsuits, complex legal issues, and numerous class actions, and neither the Plaintiff nor his attorneys have any interests, which might cause them not to vigorously pursue this action.

72. This action has been brought, and may properly be maintained, as a class action pursuant to the provisions of Rule 23 of the Federal Rules of Civil Procedure because there is a well-defined community interest in the litigation:

**Numerosity**: The Plaintiff is informed and believes, and on that basis alleges, that the Plaintiff Classes defined above are so numerous that joinder of all members would be impractical; and

**Common Questions Predominate**: Common questions of law and fact exist as to all members of the Plaintiff Classes and those questions predominate over any questions or issues involving only individual class members. The principal issues are whether the Defendant's written communications, in the form attached as **Exhibit 1 and Exhibit 3** violate the FDCPA; and

**Typicality**: The Plaintiff's claims are typical of the claims of the class members. Plaintiff and all members of Plaintiff Class have claims arising out of the Defendants common uniform course of conduct complained of herein; and

**Adequacy**: The Plaintiff will fairly and adequately protect the interests of the class members insofar as Plaintiff has no interests that are adverse to the absent class members. The Plaintiff is committed to vigorously litigating this matter. Plaintiff has also retained counsel experienced in handling consumer lawsuits, complex legal issues, and class actions. Neither the Plaintiff nor her counsel has any interests which might cause them not to vigorously pursue the instant class action lawsuit; and

**Superiority**: A class action is superior to the other available means for the fair and efficient adjudication of this controversy because individual joinder of all members would be impracticable. Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum efficiently and without unnecessary duplication of effort and expense that individual actions would engender.

**Violation**: Whether Defendant's form letters made misrepresentations, omitted providing the mandatory validation and dispute notice and violated the FDCPA.

73. Certification of a class under Rule 23(b)(1)(A) of the Federal Rules of Civil Procedure is appropriate because adjudications with respect to individual members create a risk of inconsistent or varying adjudications which could establish incompatible standards of conduct for Defendants which, on

information and belief, collect debts throughout the United States of America through letters like **Exhibit 1 and Exhibit 3**.

74. Certification of a class under Rule 23(b)(3) of the Federal Rules of Civil Procedure is also appropriate in that the questions of law and fact common to members of the class predominate over any questions affecting an individual member, and a class action is superior to other available methods for the fair and efficient adjudication of the controversy.

75. Depending on the outcome of further investigation and discovery, Plaintiff may, at the time of class certification motion, seek to certify a class only as to particular issues pursuant to Fed.R.Civ.P. 23(c)(4).

## VII.    FIRST CAUSE OF ACTION

### VIOLATIONS OF THE FAIR DEBT COLLECTION PRACTICES ACT
### (AGAINST DEFENDANT DIAMOND)

76. Plaintiff realleges and incorporates by reference the allegations in the preceding paragraphs of this Complaint.

77. Defendant violated the FDCPA.  Defendant's violations with respect to its written communications in the form attached as **Exhibit 1 and Exhibit 3** include, but are not limited to, the following:

   a.  Using false, deceptive, and misleading representations or means in connection with the collection of any debt in violation of 15 U.S.C. § 1692e;

   b.  Using false representations and/or deceptive means to collect or attempt to collect any debt or to obtain information concerning a consumer in violation of 15 U.S.C. § 1692e(10);

   c.  Failing to properly disclose the mandatory Validation and Verification requirements of 15 U.S.C. § 1692g(a)(4) and (a)(5) and 1692e; and

   d.  Overshadowing and/or eliminating the validation, verification and dispute rights of the Plaintiff under 15 U.S.C. § 1692g(a)(4), (a)(5) and 15 U.S.C. § 1692g(b) in **Exhibit 1 and 3**; and

e.  Eliminating the requirement that a debt collector cease all collection activities once it receives a written request for validation under 15 U.S.C. § 1692g(b) in **Exhibit 1 and 3**; and

f.  Violating 15 U.S.C. § 1692e(11) by not providing the mini-Miranda notifying the consumer the Defendant is a debt collector; and

g.  The false representation of the character and legal status of the debt letter collected or attempted to be collected by Defendants under 15 U.S.C. § 1692e(2)(A).

78. The wrongful conduct of Defendants alleged above caused confusion, fear, emotional distress associated with public lien filings and damage to credit when it invaded the rights of the Plaintiffs which are protected by the FDCPA, the invasion of which caused injury in fact and damage to the Plaintiffs financially and harmed the Plaintiffs' public reputation with the threats of foreclosure, liens, adverse credit filings and increased collection and legal fees if the debt is not paid to Defendant without any dispute as to the amount owed.

79. As alleged above, Defendant's misstatements, misrepresentations, and omissions of the rights afforded by the FDCPA in Defendant's "FINAL NOTICES" harmed the Plaintiffs by causing them to unintentionally waive their FDCPA debt-validation rights, including suspension of collection of disputed debts.

80. As alleged above, Defendant's failure to provide information about the **in writing** requirement harmed the Plaintiffs by placing them at a materially greater risk of falling victim to "abusive debt collection practices," the elimination of which is the FDCPA's purpose.

WHEREFORE, Plaintiff seeks judgment against Defendant for:

a.  Statutory and Actual damages for Plaintiff in the amount of $1,000.00 pursuant to 15 U.S.C. § 1692k(a)(2)(A) and (B);

b.  Statutory damages for the members of the FDCPA Class, *pro rata*, in the amount of the lesser of $500,000.00 or one percent centum of the net worth of Defendants pursuant to 15 U.S.C. § 1692k(a)(2)(B);

c.  Costs and reasonable attorney's fees pursuant to 15 U.S.C. § 1692k(a)(3); and;

d.  Such further relief as the court deems just and proper.

## VIII.   JURY DEMAND

Plaintiff hereby demands this case be tried before a jury.

**RESPECTFULLY SUBMITTED** this August 31, 2018.

By: *Robert Heieck*
Robert Heieck, Esq.
**DC Capital Law, LLP**
700 12th Street NW Ste 700
Washington, D.C. 20005
Rheieck@dccapitallaw.com
*Attorney for Plaintiff and*
*Potential Plaintiff Class Members*

By: *Brian Parker*
Brian Parker, Esq.
(Pro Hac Vice pending)
**DC Capital Law, LLP**
700 12th Street NW Ste 700
Washington, D.C. 20005
Bparker@dccapitallaw.com
*Attorney for Plaintiff and*
*Potential Plaintiff Class Members*